UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DERRICK EARL MILLER,** : | |
| **Plaintiff** : | **CIVIL ACTION NO. 3:14-0370** |
| v. : | **(JUDGE MANNION)** |
| **UNITED STATES,** : | |
| **Defendant** : | |

## MEMORANDUM

### I.    Background

Plaintiff, Derrick Earl Miller, an inmate confined in the United States Penitentiary, Lewisburg, Pennsylvania, filed the above captioned Federal Tort Claims Act (FTCA) action pursuant to §28 U.S.C. 2671, et seq., alleging two instances of staff assault, battery, and negligence on July 15 and August 11, 2013. (See Doc. 1).

Specifically, Plaintiff states that "on July 15, 2013, between the hours of 9:00 am and 10:29 am, Officer S. Buedendorf came to the Plaintiff's cell, opened up the cell door window cover, pointed at the Plaintiff and stated, 'I got something for your ass'." (Doc. 1 at 2). Following this statement, Officer Buedendorf allegedly "came to the Plaintiff's cell along with Officer C. Brininger and handcuffed the Plaintiff and his cellmate." Id. Plaintiff states that "after [he] was subdued in handcuffs behind his back, Officer S. Buedendorf and Officer Brininger extracted the Plaintiff from his cell for no justifiable

reason but to assault the Plaintiff and after being extracted from his cell, the Plaintiff was escorted to the third floor shower, which is a blind spot with no cameras, and both officers proceeded to slam the Plaintiff face first into the ground, meanwhile the Plaintiff's hands were restrained behind his back, and the Plaintiff was not resisting in any shape, form or fashion." (Doc. 1 at 3). After being slammed on the face, Plaintiff claims that his "right eye began to swell immediately, and both officers starting kicking and punching the Plaintiff, while the Plaintiff was facedown on the ground subdued in handcuffs behind his back." Id.

Immediately following the incident, Plaintiff states that he was "placed in hard metal restraints (i.e. hard handcuffs attached to a belly chain and hard metal shackles) which were applied extremely tight in a manner that caused permanent scaring on the Plaintiff's wrist, abdomen, back and ankles", and which "can still be visibly seen going around the Plaintiff's abdomen and back." Id. Plaintiff claims that he was "left in hard metal ambulatory restraints for 24 hours in violation of 28 C.F.R. §552.22 (c)(f), which states that restraints may only remain on an inmate until self-control is regained." (Doc. 1 at 4). Plaintiff believes that because "the lieutenants were able to do restraint checks" and "medical was able to conduct restraint checks without any resistance, therefore self-control had been regained, but medical

personnel was negligent when they performed their restraint checks and they concurred to leave [Plaintiff] in restraints, even though they were aware that the hard restraints were causing the Plaintiff injury." Id.

On August 11, 2013, Plaintiff states that while being extracted from his cell during a cell rotation, officers "slammed the Plaintiff on the floor and lied like the Plaintiff assaulted an officer, but the Plaintiff was subdued in handcuffs behind his back in total compliance." Id. He claims that Officer C. Brininger told him that "since you keep trying to mail letters out and get BP8's regarding what happened, we got a new method for you." Id. Plaintiff was then "placed back into hard metal ambulatory restraints." Id.

Plaintiff claims that while in restraints, he "did not receive proper medical care for his wounds, instead the lieutenants and nurses falsified government documents when they conducted ambulatory restraint checks, so/that they could justify torturing the Plaintiff." (Doc. 1 at 5). While in restraints, Plaintiff states that he suffered "lacerations, cuts, nerve damage, and severe swelling and discoloration in the Plaintiff's wrist, ankles, abdomen, and back." Id.

On February 28, 2014, Plaintiff filed the instant action in which he claims that "the aforementioned federal prison officials exhibited negligence and assault and battery, which caused actual injury to the Plaintiff." Id. As such,

3

he 'is filing his complaint under the Federal Tort Claim Act, pursuant to 28 U.S.C. §1346(6)" which "permits suit in federal court for damages for injury such as the personal injury caused by the negligent and wrongful acts of the aforementioned federal prison officials who acted within the scope of their employment. Id. For relief, Plaintiff seeks compensatory damages, as well as "to be examined by an outside physician." Id.

Presently before the Court is Defendant's motion for summary judgment. (Doc. 14). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendant's motion for summary judgment will be granted.

**II.    Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in

response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir.1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

III. **Statement of Facts**

On July 15, 2013, Incident Report No. 2468088 was issued to Plaintiff for Assault on Staff, Code violation 224, and Refusal to Obey an Order, Code violation 307. (Doc. 18-1 at 26, Incident Report). The incident report, which was written by Senior Officer S. Buedendorf, reads as follows:

> On the above date and approximate time, I was escorting inmate MILLER, D (#10906-171) back from the third floor shower to Cell 326, after a routine cell search. Upon stepping from the shower

> room, I/M Miller kicked up with the heel of his left foot, attempting to strike my groin, but struck my upper left inner thigh. I then placed I/M Miller onto the landing floor outside of the showers to attempt to regain control. Once on the floor, I/M Miller was constantly aggressive, continuing in his attempts to kick me repeatedly. I gave several direct orders to cease his actions, but I/M Miller continued his aggressive actions until responding staff arrived on scene. I have been medically assessed fit to return to duty and lost no equipment.

Id.

On September 4, 2013, Plaintiff appeared for a hearing before Discipline Hearing Officer ("DHO"), A. Jordan. (Id. at 28-30, DHO Report). Petitioner was found guilty of the prohibited act of Conduct which Disrupts, most like Assaulting any Person, a Code 299/224 violation. Id. Specifically, the DHO found that as staff tried to escort Miller back to his cell, he became disruptive, kicked up at a staff member trying to hit the officer in the groin, but struck his upper thigh. Id. Staff tried to gain control of Miller but he continued to be aggressive. Id. The DHO sanctioned Miller to the disallowance of twenty-seven (27) days of good conduct time, thirty (30) days disciplinary segregation, and five (5) months loss of visiting, telephone and commissary privileges. Id.

Incident Report 2468088 remains on Miller's disciplinary record and has never been expunged. (See Doc. 18-1 at 7, Chronological Disciplinary

Record).

On August 11, 2013, Incident Report No. 2478910 was issued to Plaintiff for Assaulting Any Person, Code violation 224A. (Doc. 18-1 at 53, Incident Report). The incident report, which was written by Senior Officer S. Buedendorf, reads as follows:

> On the above date at approximately 8:36 AM while conducting 21 day cell rotations I removed I/M Miller #10906-171 from cell 112. While attempting to pat search him he became aggressive, specifically he attempted to break free of my control and dove towards Officer Miller's lower body. I immediately placed him on the ground to regain control. While on the ground I/M Miller continued to actively resist by kicking his legs towards myself and responding staff.

Id.

On August 21, 2013, Plaintiff appeared for a hearing before Discipline Hearing Officer ("DHO"), A. Jordan. (Id. at 55-58, DHO Report). Petitioner was found guilty of the prohibited act of Conduct which Disrupts, most like Attempted Assault on any Person, a Code 299/224A violation. Id. Specifically, the DHO found that after trying to pat search Miller, he became aggressive, tried to break free of staff's control, kicked at officers, and dove towards officers in an aggressive manner. See id. The DHO found against Miller's version that he felt dizzy and fell to the feet of staff. Id. The DHO sanctioned Miller to the disallowance of twenty-seven (27) days of good conduct time,

thirty (30) days disciplinary segregation, and four (4) months loss of visiting, telephone and commissary privileges. Id.

Incident Report 2478910 remains on Miller's disciplinary record and has never been expunged. (See Doc. 18-1 at 7, Chronological Disciplinary Record).

On October 10, 2013, the Bureau of Prisons' Northeast Regional Office received administrative tort claim TRT-NER-2014-00518 from Miller. (Doc. 18-1 at 67-69, Claim for Damage, Injury or Death). The administrative tort claim alleged that, on August 11, 2013, Miller was physically assaulted by officers during a cell rotation and placed in ambulatory restraints that were too tight. Id. Miller sought to be compensated in the amount of $1,000,000. Id.

On October 15, 2013, the Bureau of Prisons' Regional Office received administrative tort claim TRT-NER-2014-00509 from Miller. (Doc. 18-1 at 63-65). The administrative tort claim alleged that, on July 15, 2013, Miller was physically assaulted by officers after being pulled out of his cell and escorted to the shower area. Id. Miller sought to be compensated in the amount of $1,000,000. Id.

On February 28, 2014, Miller filed the above captioned action in this Court. (Doc. 1).

On April 9, 2014, the Northeast Regional Counsel's Office denied administrative tort claim TRT-NER-2014-00518. (Doc. 18-1 at 69, Letter Decision). The Region notified Miller he could "bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this memorandum." See id.

On April 14, 2014, the Region denied administrative tort claim TRT-NER-2014-00509. (Doc. 18-1 at 65, Letter Decision). The Region notified Miller that he could "bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this memorandum." See id.

**IV. Discussion**

    **A. FTCA Claim**

As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by the agency, or be deemed to be denied. Section 2675(a) of Title 28, United States Code, provides in pertinent part:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally

denied by the agency in writing and sent by certified or registered mail. The failure of the agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section....

The plaintiff has the burden of demonstrating that the agency actually received the administrative claim. Lightfoot v. United States, 564 F.3d 625 (3d Cir.2009). This burden rests with the plaintiff because, in general, the United States enjoys sovereign immunity from suit unless it otherwise consents to be sued. White–Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir.2010). The United States' "consent to be sued must be 'unequivocally expressed,' and the terms of such consent define the court's subject matter jurisdiction." Id. The Federal Tort Claims Act constitutes "a limited waiver of the United States's sovereign immunity." Id. The FTCA provides that the United States shall be liable, to the same extent as a private individual, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. §1346(b)(1); see also 28 U.S.C. §2674.

Prior to commencing an FTCA action against the United States in federal court, however, a plaintiff must "first present[ ] the claim to the

11

appropriate Federal agency" and receive a final denial "by the agency in writing and sent by certified or registered mail." 28 U.S.C. §2675(a). A claim is considered to be presented when the federal agency receives written notification of the alleged tortious incident and the alleged injuries, together with a claim for money damages in a sum certain. 28 C.F.R. §14.2(a). If the receiving federal agency fails to make a final disposition of the claim within six months from the time it is filed, that failure is "deemed a final denial of the claim" for purposes of commencing suit under the FTCA. 28 U.S.C. §2675(a).

The Third Circuit has instructed that "[i]n light of the clear, mandatory language of the statute, and [the] strict construction of the limited waiver of sovereign immunity by the United States, ... the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived." Roma v. United States, 344 F.3d 352, 362 (3d Cir.2003) (citing Livera v. First Nat'l Bank of New Jersey, 879 F.2d 1186, 1194 (3d Cir.1989)). The Supreme Court has likewise succinctly explained that "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." McNeil v. United States, 508 U.S. 106, 113 (1993). As a result, a district court may dismiss a claim brought under the FTCA for lack of subject matter jurisdiction pursuant

12

to Rule 12(b)(1) where the plaintiff has not exhausted his administrative remedies prior to filing suit. See, e.g., Abulkhair v. Bush, 413 F. App'x 502, 506 (3d Cir.2011); Accolla v. United States Gov't, 369 F. App'x 408, 409–10 (3d Cir.2010) (finding the district court properly dismissed FTCA claim where the plaintiff filed federal suit prior to exhausting administrative remedies).

As is apparent from the undisputed facts, Miller filed two administrative tort claims in October, 2013. The Bureau of Prisons then had six months to make a final decision on his claims. If no final disposition was received within the six months, Miller had the option to treat this silence as a final denial of the claims, and file suit against the United States in federal court. Miller, however, did not wait to receive a final decision, or for the six months to pass. Instead, he filed the above captioned action on February 28, 2014, after waiting only four months.

Because Miller had to file his administrative tort claim with the Bureau of Prisons and receive a final denial of his claims pursuant to 28 U.S.C. §2675(a) prior to filing his lawsuit, and he failed to do so, this Court lacks jurisdiction over the claims. McNeil v. United States, 508 U.S. 106, 111-112 (1993) (holding that a court is without jurisdiction to rule on a prematurely filed action even if an agency denies the related administrative claim soon after the

federal lawsuit is filed); Accolla v. United States, 369 F. App'x 408, 409-10 (3d Cir. 2010) (holding "because Accolla filed his FTCA action in federal court before [the agency's ruling on his administrative tort claim] and before the expiration of the appropriate six month period, the District Court was without jurisdiction to rule on the FTCA claim."); Roma v. United States, 344 F.3d 352, 363 (3d Cir. 2003) (noting "the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived.").

To the extent that Miller argues in his brief in opposition that he "followed through many time on their Administrative Remedy System all the way to Central Office Washington, D.C., in to the Region Office on August 30, 2013", (Doc. 20 at 2, Brief in Opposition), Miller's completion of the BOP's administrative remedy process set forth at 28 C.F.R. §542, et seq., however, does not satisfy the exhaustion requirements of the FTCA. See Robinson v. United States, 2014 WL 2940454, *6 (M.D. Pa. Jun. 30, 2014) (recognizing that "an inmate may not rely upon the submission of prison grievances to satisfy his separate and independent exhaustion obligation under the FTCA"). Consequently, the Court does not have jurisdiction to hear Miller's tort claim, and the Defendant is entitled to summary judgment.

## B. Claims Based on Disciplinary Proceedings

The sanctions levied against Miller were all imposed as a result of prison misconduct. As such, the Court finds that any claim for monetary damages regarding his disciplinary hearing is barred under Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997).

A prisoner cannot bring an action for monetary damages against prison officials relating to procedural errors in a disciplinary proceeding when a judgment in favor of the inmate would necessarily imply the invalidity of the disciplinary hearing, unless the inmate can demonstrate that the disciplinary finding has previously been invalidated. See Edwards v. Balisok, 520 U.S. 641 (1997).

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that a person convicted of a criminal offense could not bring a civil rights action challenging any aspect of the criminal conviction without first using appropriate procedural mechanisms to overturn the criminal proceeding. Later, in Balisok, 520 U.S. at 646, the Supreme Court extended the rationale of Heck to disciplinary proceedings in the prison context, holding an inmate may not bring a civil rights action for damages related to an inmate

disciplinary proceeding without first challenging and overturning, via the appropriate proceedings, the disciplinary hearing in question. See id. "Similarly, plaintiff's claims are not cognizable under the FTCA insofar as a ruling in plaintiff's favor would imply the invalidity of plaintiff's disciplinary conviction." Hinton v. United States, 91 Fed. Appx. 491, 493 (6th Cir. 2004) (citing Parris v. United States, 45 F. 3d 383, 385 (10th Cir. 1995); Butcher v. United States, 2007 WL 2207902, *3 (M.D. Pa. Jul. 30, 2007).

There is no evidence of record demonstrating that Miller's disciplinary sanctions have ever been called into question, or overturned through a collateral action, such as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. In fact, the record evidence reveals that these sanctions still remain on Miller's disciplinary record. Consequently, Miller's claims are plainly barred by Heck and Edwards, and the United States is entitled to summary judgment.

**V.    Conclusion**

Based upon the undisputed facts of record, Defendant is entitled to summary judgment with respect to Plaintiff's FTCA Claim and his request for damages regarding his disciplinary proceedings. An appropriate order shall

issue.

                                        s/ *Malachy E. Mannion*
                                        **MALACHY E. MANNION**
                                        **United States District Judge**

**Dated: November 6, 2014**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0370-01.wpd